IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL NELSON, | No. 4:23-CV-00273 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| CAPTAIN TAYLOR, *et al.*, | |
| Defendants. | |

# MEMORANDUM OPINION

### APRIL 10, 2025

Plaintiff Michael Nelson, a serial prisoner litigant, filed the instant *pro se* Section 1983[1] action in February 2023, alleging constitutional violations by officials at the State Correctional Institution, Mahanoy (SCI Mahanoy), located in Frackville, Pennsylvania. Nelson's Section 1983 claims have been winnowed to a single First Amendment retaliation claim against an SCI Mahanoy corrections officer. Both parties have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Because Nelson failed to exhaust available administrative remedies, the Court will grant Defendant's motion for summary judgment and deny Nelson's competing Rule 56 motion.

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

I.      **FACTUAL BACKGROUND**[2]

Nelson initially filed suit in this Court in early February 2023.[3] He named twelve Defendants, broadly alleging that they retaliated against him for filing an earlier federal lawsuit or failed to intervene in that retaliation.[4] His complaint, however, did not specify personal involvement for the named Defendants, instead claiming that Defendants collectively violated his constitutional rights.[5] Defendants moved to dismiss his complaint or alternatively for a more definite statement under Federal Rule of Civil Procedure 12(e).[6]

---

[2]  Local Rule of Court 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* Both statements must include "references to the parts of the record that support the statements." *Id.* Nelson filed his motion for summary judgment on November 4, 2024, (Doc. 94), and his statement of material facts the same day, (Doc. 96). Defendant Wilkins Cespedes timely filed his responsive statement of facts on December 12, 2024, (Doc. 103), after requesting and receiving an extension of time. Cespedes filed his motion for summary judgment on November 14, 2024, (Doc. 97), and timely filed his statement of material facts on December 19, 2024, (Doc. 105), after requesting and receiving an extension of time. Nelson failed to file a responsive statement of facts to Cespedes' statement of material facts as required by Local Rule 56.1. Accordingly, Cespedes' statement of material facts (Doc. 105) will be deemed admitted unless plainly contradicted by the record. *See* LOCAL RULE OF COURT 56.1.

[3]  *See generally* Doc. 1. Nelson's original complaint is unsigned, in violation of Federal Rule of Civil Procedure 11. *See* FED. R. CIV. P. 11(a) (requiring "[e]very pleading, written motion, and other paper" to be signed by an attorney or—if the filing party is unrepresented—by the "party personally"). The complaint is also undated, but the postmark on the mailing envelope is dated February 13, 2023, (*see* Doc. 1 at 4), indicating that Nelson's complaint was put into the prison mail system at least as early as February 13.

[4]  *See generally* Doc. 1.

[5]  *See generally id.*

[6]  Doc. 38.

2

Nelson did not oppose Defendants' motion for a more definite statement. He filed a response in which he attempted to provide additional factual allegations, although he did not file an amended complaint or a proper brief in response to Defendants' motion.[7]  After briefing had closed, he filed two supplements, which also appeared to be attempts to provide additional allegations in response to Defendants' Rule 12(e) motion.[8]  Those supplements, however, were filed out of time and without leave of court.

Ultimately, the Court granted Defendants' unopposed Rule 12(e) motion and gave Nelson fourteen days to file a comprehensive amended pleading that included all of his factual allegations against the numerous Defendants.[9]  The Court specifically admonished Nelson that he was to file an amended complaint and "must provide sufficient factual detail such that Defendants can properly respond to said pleading."[10]  The Court further advised Nelson that he "must plausibly allege personal involvement by the individual named Defendants," attach any exhibits he desired to include with his amended complaint, and that he "must include all his allegations within this amended pleading, as the Court will not accept 'supplements' thereto."[11]

---

[7]   *See generally* Doc. 41.
[8]   *See* Docs. 43, 44.
[9]   Doc. 45 (citing FED. R. CIV. P. 12(e)).
[10]  *Id.*
[11]  *Id.*

More than three weeks passed, but Nelson failed to file an amended complaint. The Court issued a follow-up Order,[12] again admonishing Nelson that he must file a comprehensive amended complaint that included allegations of personal involvement by the numerous named Defendants. The Court warned Nelson that failure to comply could result in the striking of his original complaint under Rule 12(e) or dismissal for failure to prosecute under Rule 41(b).[13]

Nelson responded by filing a single-page amended complaint, which he again failed to date or sign.[14] The Court nevertheless screened that filing pursuant to 28 U.S.C. § 1915A(a) and determined that Nelson had once more failed to state a claim for relief against any Defendant.[15] The Court gave Nelson one final opportunity to file a comprehensive second amended complaint that would plausibly allege a Section 1983 claim.[16]

On January 14, 2024, Nelson submitted a one-page second amended complaint.[17] That pleading plausibly alleged a First Amendment retaliation claim against Corrections Officer Wilkins Cespedes only.[18] Nelson asserted that Cespedes had refused to provide him breakfast and lunch for approximately three

---

[12] Doc. 46.
[13] *Id.*
[14] *See generally* Doc. 47.
[15] *See* Doc. 48 at 5-8.
[16] *See id.* at 8-10; Doc. 49 ¶¶ 3-4.
[17] Doc. 50.
[18] *See id.* at 1; Doc. 51 at 1.

4

months from October 6, 2022, to January 13, 2023, in retaliation for Nelson's previous lawsuit filed against another SCI Mahanoy official.[19] The Court accordingly dismissed the other Defendants from this case and directed Cespedes—the lone remaining Defendant—to respond to the second amended complaint within fourteen days.[20]

Cespedes timely answered, and discovery ensued. Both parties now move for summary judgment under Federal Rule of Civil Procedure 56.[21] Those Rule 56 motions are full briefed and ripe for disposition.[22]

## II. STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[23] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[24] Material facts are those "that could alter the outcome" of the litigation, and "disputes are

---

[19] *See* Doc 50 at 1.
[20] *See* Doc. 51 at 2.
[21] Doc. 94; Doc. 97.
[22] Nelson initially filed a brief in opposition (Doc. 109) that did not address Cespedes' defense of failure to exhaust administrative remedies. Nelson then moved to withdraw that initial brief, (*see* Doc. 116), and to supplement it with a different brief in opposition, (Doc. 116-1). The Court will grant Nelson's motion to withdraw and supplement and will consider his supplemental opposition brief (Doc. 116-1) herein.
[23] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[24] Fed. R. Civ. P. 56(a).

'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[25]

At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."[26] The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor."[27] This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue.[28] A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]."[29] Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party.[30]

---

[25] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[26] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[27] *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).
[28] *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).
[29] *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).
[30] *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).

Courts are permitted to resolve cross-motions for summary judgment concurrently.[31] When doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion.[32]

## III.   DISCUSSION

Cespedes asserts a single threshold Rule 56 argument. He contends that Nelson failed to exhaust administrative remedies for his First Amendment retaliation claim and therefore procedurally defaulted that claim. Nelson claims that administrative remedies were unavailable.

The Prison Litigation Reform Act of 1995 (PLRA)[33] requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations.[34] Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system.[35] Failure to properly exhaust generally results in the claim being procedurally defaulted and unreviewable.[36] The exhaustion process a

---

[31] *See Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008); *see also Johnson v. Fed. Express Corp.*, 996 F. Supp. 2d 302, 312 (M.D. Pa. 2014); 10A CHARLES ALAN WRIGHT et al., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2015).

[32] FED. R. CIV. P. 56; *Lawrence*, 527 F.3d at 310 (quoting *Rains v. Cascade Indus.*, 402 F.2d 241, 245 (3d Cir. 1968)).

[33] 42 U.S.C. § 1997e *et seq.*

[34] *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).

[35] *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

[36] *See Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004).

prisoner must follow is governed by the contours of the prison grievance system in effect where the inmate is incarcerated.[37]

Pennsylvania's Department of Corrections (DOC) employs a three-step grievance process that must be completed to properly exhaust administrative remedies in most cases.[38] If informal resolution attempts do not solve the problem, the first step is to file a written grievance (using form DC-804, Part 1) with the Facility Grievance Coordinator within 15 working days after "the event upon which the claim is based."[39] An adverse decision by the grievance coordinator must be appealed to the Facility Manager within 15 working days of the initial-review response or rejection.[40] Finally, an adverse decision by the Facility Manager must be appealed to "Final Review" with the Secretary's Office of Inmate Grievances and Appeals (SOIGA), and again must be submitted within 15 working days of the date of the Facility Manager's decision.[41]

The DOC has specific requirements for grievances submitted by inmates. Those requirements include, among other conditions, that the grievance "be legible [and] understandable"; "include a statement of the facts relevant to the claim" as

---

[37] *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Woodford*, 548 U.S. at 90-91.
[38] *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305-06 & n.4 (3d Cir. 2020); COMMONWEALTH OF PA., DEP'T OF CORR., INMATE GRIEVANCE SYS., Policy No. DC-ADM 804 (May 1, 2015) (hereinafter "DC-ADM 804").
[39] DC-ADM 804 § 1(A)(3)-(5), (8).
[40] *Id.* § 2(A)(1).
[41] *Id.* § 2(B)(1).

well as "the date, approximate time, and location of the event(s) that gave rise to the grievance"; that the inmate "specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law"; that the prisoner "identify individuals directly involved in the event(s)"; and that the grievance include "the specific relief sought," including "compensation or other legal relief normally available from a court."[42]

It is undisputed that there is only one grievance Nelson filed under DC-ADM 804 that is relevant to the retaliation claim in the instant lawsuit: grievance number 1016594.[43] Nelson filed that grievance on January 23, 2023, and it was marked as received by Facility Grievance Coordinator Jennifer Mahally the same day.[44]

Mahally promptly rejected Nelson's grievance later that day, explaining to Nelson that he was on "grievance restriction"[45]—limiting him to one grievance every 15 working days—and that he had already filed a grievance on January 9, 2023.[46] Thus, Nelson was prohibited from filing another grievance until January 31, 2023—fifteen working days after his prior January 9 grievance.[47]

---

[42] *Id.* § 1(A)(11).
[43] *See* Doc. 105 ¶¶ 8-10, 17; Doc. 116-1 at 1-2.
[44] *See* Doc. 105-2 at 5.
[45] Under Section 3 of DC-ADM 804, inmates who file five frivolous grievances within a 30-day period may be placed on grievance restriction, which limits those inmates to filing "no more than one grievance every 15 working days." *See* DC-ADM 804 § 3(A)(1)(c).
[46] Doc. 105 ¶ 12; Doc. 105-2 at 3 ¶ 4; Doc. 105-2 at 4.
[47] Doc. 105 ¶ 13; *see* DC-ADM 804 § 3(A)(1)(c), (d).

Nelson took no further administrative action with respect to grievance number 1016594 or his First Amendment retaliation claim against Cespedes.[48] Instead, it appears that he simply filed the instant Section 1983 lawsuit in federal court.

This misstep was fatal on Nelson's part. In order to properly utilize the DOC's three-step grievance process, all Nelson had to do was wait approximately one week and he would have been free to press his constitutional tort claim through DC-ADM 804.[49] Indeed, because Nelson maintained in his grievance that he had only learned of the retaliatory animus on January 13, 2023,[50] he had 15 working days from that date, or until February 6, 2023, in which to file a grievance about the alleged retaliation.[51] Thus, Nelson had more than sufficient time to file his grievance within the limitations period provided by DC-ADM 804 § 1(A)(8) after waiting the requisite 15 working days from his prior January 9 grievance. Instead, he simply abandoned the grievance process.

Nelson raises two arguments in response to Cespedes' defense of failure to exhaust administrative remedies. He first asserts that it is impractical to contend that he should have waited until January 31 to file his grievance "and continue to

---

[48] Doc. 105 ¶ 15; Doc. 105-2 at 3 ¶¶ 5-8.
[49] *See* DC-ADM 804 § 3(A)(1)(c).
[50] *See* Doc. 105-2 at 5 (alleging that he discovered on "Friday, January 13, 2023," that corrections officers—including Cespedes—were retaliating against him for filing a previous lawsuit).
[51] *See* DC-ADM 804 § 1(A)(5), (8) (requiring a grievance to be filed within 15 working days of event complained of).

10

be denied (2) of his (3) daily meals" while he waited.[52] Yet Nelson's own actions and allegations eviscerate this argument.

According to Nelson, he was being denied two of his three daily meals by Cespedes since October 6, 2022.[53] Moreover, Nelson avers in his second amended complaint—contrary to his grievance—that he was immediately aware that Cespedes was denying meals in retaliation for the prior lawsuit, to wit: "On *October 5, 2022*, Defendant Wilkins Cespedes came to Plaintiff Nelson's cell door . . . and told Plaintiff Nelson to withdraw the lawsuit against Ms. M (Nelson v. Mroczka, 4:22-cv-01238) or he'll ma[k]e Plaintiff Nelson's life a living hell."[54]

In light of Nelson's own allegations, it is entirely unclear why he would wait over three months to raise such a serious complaint to prison officials regarding the denial of meals. Thus, his contention that it would have been impractical to wait one week to file his grievance against Cespedes is directly undercut by his own allegations that he in fact waited more than *three months* to bring his claim to the attention of SCI Mahanoy officials.[55] Nelson's contention is further undercut by the fact that he filed approximately *thirty* grievances concerning other matters

---

[52] Doc. 116-1 at 2.
[53] *See* Doc. 50 ¶¶ 2-3.
[54] *Id.* ¶ 1 (emphasis added).
[55] The Court further observes that, when facing emergency or urgent situations, inmates may not need to proceed through DC-ADM 804 and can instead raise their claim by "contact[ing] the nearest staff member for immediate assistance." *Downey*, 968 F.3d at 306 (quoting DC-ADM 804 § 1(A)(2)). As such, inmates on grievance restriction are not precluded from bringing emergency or urgent issues directly to the attention of prison officials simply because they can only file one DC-ADM 804 grievance every 15 working days.

(including, *inter alia*, health care, mail, release of information, problems with staff, and prison conditions) during this three-month period before formally complaining about the alleged retaliatory denial of meals.[56]

Nelson next argues that because his grievance was rejected due to being on grievance restriction and he could not appeal this rejection, exhaustion is excused because administrative remedies were unavailable.[57] The Court disagrees.

Under Nelson's reasoning, any time a prisoner files multiple frivolous grievances and is placed on grievance restriction, he or she no longer has to exhaust administrative remedies through the DOC's three-step grievance process. Nelson's faulty logic would allow frivolous filers to make an end-run around the DOC's carefully crafted grievance system: simply file enough frivolous grievances to be put on grievance restriction and then, instead of being limited to one grievance every 15 working days that can be pursued through all three levels of review, the restricted inmate no longer has to properly exhaust *any* claims—just file the initial grievance, wait for its inevitable rejection, and then head to federal court.

The better understanding of the DOC's grievance restriction process is that a prisoner must simply wait the requisite time between grievances to pursue

---

[56] *See* Doc. 105-2 at 6.
[57] *See* Doc. 116-1 at 2.

12

administrative remedies for complaints that are not of an emergency nature.[58] Administrative remedies are not made "unavailable" merely because a prisoner has abused the grievance process and is placed on grievance restriction.[59] Rather, the inmate must press his grievance through all three levels of review once the temporary impediment to filing—*i.e.*, the waiting period between grievances—is removed.[60]

In Nelson's case, having to wait approximately one week to file a grievance does not mean that administrative remedies were unavailable, especially when there was more than sufficient time left to submit the grievance within the 15-working-day limitations period provided by DC-ADM 804 § 1(A)(8).[61] And even if administrative remedies were temporarily "unavailable," Nelson was required to pursue his grievance through all three levels of review once that temporary

---

[58] *See* DC-ADM 804 § 1(A)(2) & n.55, *supra*.

[59] *See Cummings v. Crumb*, 347 F. App'x 725, 727 (3d Cir. 2009) (nonprecedential) (noting that grievance restriction "would not have prevented [prisoner-plaintiff] from exhausting his remedies" because restricted inmates can still file one grievance every 15 days); *Jackson v. Unit Manager Knapp*, No. 3:22-cv-0138, 2024 WL 4630195, at *7 (M.D. Pa. Oct. 30, 2024) (same); *Ball v. Struthers*, No. 1:11-cv-1265, 2012 WL 2946785, at *11, *12 (M.D. Pa. July 19, 2012) ("[T]he fact that [prisoner-plaintiff] was under a grievance restriction pursuant to DC-ADM 804[] does not, by itself, excuse her failure to grieve this matter prior to filing suit in federal court, since those Corrections policies plainly allow inmates to file a limited number of grievances.").

[60] *See Talley v. Clark*, 111 F.4th 255, 263-64, 265 (3d Cir. 2024) (holding that, even if administrative remedies are temporarily "unavailable," prisoner must pursue grievance process once impediment to filing grievance is removed).

[61] *Cf. Fortune v. Bitner*, 285 F. App'x 947, 951 (3d Cir. 2008) (nonprecedential) (noting that prisoner who argued that he could not submit a timely grievance because he was on grievance restriction "did not attempt to submit an otherwise untimely grievance and request that it be considered on the merits in light of his grievance restriction").

impediment was removed.[62]  "In sum, the PLRA requires 'the inmate [to] err on the side of exhaustion," and Nelson "did not do so here."[63]

Neither of Nelson's arguments regarding his failure to exhaust administrative remedies is persuasive.  Nelson has thus failed to establish that there is a genuine dispute of material fact with respect to this threshold issue, so the Court must grant Cespedes' motion for summary judgment.  For the same reasons, Nelson's cross-motion for summary judgment must be denied.

## IV.  CONCLUSION

Based on the foregoing, the Court will grant Cespedes' motion for summary judgment and deny Nelson's cross-motion for summary judgment.  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[62] *Talley*, 111 F.4th at 265.
[63] *Id.* (alteration in original) (quoting *Ross*, 578 U.S. at 644).